MAXWELL, Justice,
specially concurring:
¶ 68, This case presents a battle of experts and under a typical common-sense approach to expert testimony should be affirmed. The judge weighed both side’s experts, and after doing so, concluded Carr failed in his burden of proof. While this is generally how our courts handle expert testimony, the majority finds the trial judge erred in this process, essentially for thinking like a jurist, not a doctor.
¶ 69. 'The majority reverses the judge’s decision because he utilized a general legal framework and did not follow “the medical community’s' diagnostic framework.” Though this reasoning is counterintuitive to how our trial courts operate, it is the exact method dictated by- the United States Supreme Court’s holding in-Hall.[11] So I am constrained to find the majority correctly applies Hall when it finds the trial judge reversibly erred by “failing to balance and .analyze his adaptive functioning deficits with his IQ score.”
¶70. But I write separately - because this case is a prime example of the confusion created by Atkins[12] and compounded by Hall. Undoubtedly, whether someone is ineligible for the death penalty, due to intellectual disability is a legal question. Yet it is a legal question the United States Supreme Court has said must be largely informed by the medical community.[13] And therein lies the problem.
¶ 71. Medicine — and specifically the field of psychology — is a completely different discipline than the law. Indeed, psychology openly embraces ever-evolving definitions [14] — a stark contrast to our common law’s doctrine of stare decisis. The trial judge in this case certainly felt this tension. In his- final order, he lamented “the difficulty when attempting to make a concrete decision when the factors upon *945 which the decision must be based are grounded in the soft sciences.”
¶ 72. This begs the question — Why are we asking our trial judges to wade into the soft sciences and make medical diagnoses? We do not do that in other legal contexts. According to the majority, the trial judge here failed to “recognize[ ] that Carr’s IQ between 70 and 75, coupled with ‘severe adaptive behavior problems’ could support a diagnosis of intellectual disability.” But our trial judges are not licensed forensic psychologists. Instead, their role as a neutral and detached magistrate necessarily depends on licensed forensic psychologists to give their expert diagnoses. This is the very reason why this Court requires every Atkins claimant to produce at least one licensed forensic psychologist willing to testify to a reasonable degree of certainty that' the claimant meets the adopted clinical definitions of intellectually disabled.[15]
¶73. Here, the judge was presented with two expert opinions. Carr’s expert, Dr. Gerald O’Brien, testified Carr was intellectually disabled. But O’Brien refused to specify how he reached his conclusions. Further, he admitted he was not personally involved in the investigative process. The State’s expert, Dr. Gilbert Macvaugh, by contrast, testified he could not reach a reasonable degree of certainty whether Carr was or was not intellectually disabled, ■based on the lack of data. Moreover, the one lay witness was “unhelpful”-neither leading- credence or doubt to either expert’s view. The trial judge ultimately found the State’s expert was more credible, agreeing the' question of Carr’s intellectual disability was “too close to call.” The judge then considered this evidentiary finding in light of the applicable legal standard. And he held Carr to his legally required burden of proof. This type of analysis should be legally sufficient, since it is the exactly, how judges size up expert testimony in other contexts. But it is not under Atkins and Hall.
¶ 74. Logic dictates we should allow our judges to function like trial judges and to weigh the evidence — particularly, the credibility of the expert witnesses and their diagnoses — to make a finding whether the claimant met his or her burden of proof to show intellectual disability. It makes no sense to demand our trial judges pretend they are psychologists and to delve into the three criteria that comprise the clinical definition of intellectual disability to make an independent diagnosis. But unless and until the United' States Supreme Court untethers its Eighth Amendment jurisprudence from the ever-changing clinical definition of intellectual disability, this is the exact approach our trial judges must utilize. Until then, our judges apparently will have to don the hats of psychologists and apply the proper “diagnostic framework.” [16] ■ .
COLEMAN, J., JOINS THIS OPINION. RANDOLPH, P.J., JOINS THIS OPINION IN PART.

. Hall v. Florida,- U.S. -, 134 S.Ct. 1986, 1998, 188 L.Ed.2d 1007 (2014).

. Atkins v. Virginia, 536 U.S. 304, 122 S.Ct. 2242, 153 L.Ed.2d 335 (2002).

. Hall, 134 S.Ct. at 1993.

. See id, at 2004 (Alito, J., dissenting) (pointing out that, “because the views of professional associations often change, tying Eighth Amendment law to these views will lead to instability and continue to fuel protracted litigation,” especially when factoring in "that changes adopted by professional associations aré sometimes rescinded”). See also Chase v. State, 171 So.3d 463, 470 (Miss.2015) (“This Court is faced with the reality of evolving standards for determining intellectual disability in the medical community.").

. Chase v. State, 873 So.2d 1013, 1029 (Miss.2003).

. Hall, 134 S.Ct. at 2000.